## GENERAL COURT, OCTOBER TERM, 1804.

### CHENEY's Lessee *vs.* WATKINS.

EJECTMENT for a tract of land called *Cheney's Hazard*, lying in *Anne-Arundel* county. The defendant took defence on warrant, and plots were returned. General issue pleaded, and issue joined.

1. The plaintiff, by his counsel, read in evidence to the jury a patent for the tract of land called *Cheney's Hazard*, being the land in the declaration mentioned, granted to *Richard Cheney* on the 30th of May 1663, for 100 acres more or less. He then offered evidence to the jury to prove that the lessor of the plaintiff was the heir at law of the patentee.

The defendant then offered in evidence to the jury, a copy of the *Rent Roll* legally authenticated, viz "100 acres, *Cheney's Hazard*, surveyed 24 Dec. 1661, for *Richard Cheney*, on the south side of *South River.* Poss. *John Derbin.*"

#### *Alienations.*

"100. *Patrick Symson* from *Samuel Burgess*, and *uxor*, 17th February, 1719.

100. *Richard Hill* from *Patrick Symson* and *Eleanor*, *uxor*, 3rd November 1724.

*Altho' a deed cannot operate as a bargain and sale, it may operate as a feoffment, (there being words "give and grant,") if livery of seisin can be proved, & there may be circumstances from which livery may be presumed*

*To constitute a deed of bargain & sale there must be a money consideration, or general words of consideration under which a pecuniary consideration may be averred—other land being expressed to be the consideration is not sufficient*

*If "divers good causes and considerations" are used in the deed, without mentioning any specific consideration, the party may aver what the consideration was: and if money be averred as the consideration, it will make it a deed of bargain and sale*

*If the consideration is blood, marriage, or natural love and affection, the deed will operate as a covenant to stand seised.*

*If a deed will not have operation in one way, it may operate in some other way.*

*Neither the record of enrolment, nor a copy of a deed not directed by law to be enrolled, can be admitted in evidence.*

*The record of a will not legally attested by three witnesses, is not legal and admissible evidence to prove that the testator claimed the land therein devised, and was in possession thereof, claiming title to the same*

*From great length of possession of the land, the payment of taxes, &c. the jury may presume a conveyance from the patentee, &c.*

100. *David Macclefish,* from *Richard Hill,* 4th April 1726."

He also offered in evidence the will of *John Durbin,* dated the 9th of October 1715, whereby he devised the said land called *Cheney's Hazard,* to his wife *Elizabeth Durbin,* "to be entailed upon the said *Elizabeth,* and her heirs, neither to be sold nor mortgaged if the said *Elizabeth* has heirs by her own body, and the said heirs live to the years of twenty-one, to enjoy the said land, otherwise the son of *Dorothy Callingsworth* to enjoy the said land for him and his heirs." He also offered in evidence a deed from *Samuel Burgess,* and *Elizabeth* his wife, to *Patrick Sympson,* dated the 17th of February 1719, for the said tract of land called *Cheney's Hazard,* in which will the devise from *John Durbin* to the said *Elizabeth,* who had intermarried with *Burgess,* is recited. The acknowledgment of said deed by *Elizabeth,* and her examination by a justice of the provincial court who took the same, is that the said *"Elizabeth,* the wife of the said *Samuel,* who being by me secretly examined out of the hearing of her said husband, declared that she acknowledged within land and premises to be the right of the within named *Patrick Sympson,* his heirs and assigns for ever, free from any threats or fears of her said husband's displeasure" *(a).*

The defendant also read in evidence a deed from *Patrick Sympson,* and *Eleanor* his wife, to *Richard Hill,* dated the 23d of November 1724, for the said land. He then produced in court the original land record book of *Anne-Arundel* county, under the custody of the clerk of *Anne-Arundel* county court, and by him brought into court, in which book was the record of a deed purporting to be a deed from *Richard Hill* to *David Macklefish,* dated the 4th of April 1726, and offered to read from the said record book the enrolment and copy of the said deed, in the words following, to wit: *"This Indenture,* made this fourth day of April *Anno Domini* one thousand seven

*(a)* This deed was read as passing an estate for life of *Samuel Burgess,* it being admitted that the acknowledgment of the wife was defective.

hundred and twenty-six, between *Richard Hill*, of Anne-Arundel in the province of Maryland, practitioner in physic, of the one part, and *David Macklefish*, of the same county and province, planter, of the other part, witnesseth, that the said *Richard Hill*, for and in consideration of two tracts of land, situate and lying in Anne-Arundel county and province aforesaid, one of which tract containing one hundred acres, (being part of a tract of four hundred and fifty acres,) formerly granted unto *Thomas Besson* of this county, called *Bessendon*, and another tract of land, formerly laid out for *Thomas Sutton*, called *Sutton's Addition*, adjoining to the former, containing and laid out for twenty acres, both tracts containing one hundred and twenty acres more or less, as in the original certificates doth more at large appear—HATH given, granted, bargained, set over, sold and confirmed, and by these presents he, the said *Richard*, doth for himself, his heirs, executors, administrators and assigns, give, grant, bargain set over, sell and confirm, unto the said *David Macklefish*, his heirs, executors, administrators and assigns, for ever, one tract of land laid out for *Richard Cheney* the twenty-fourth day of December 1661, called *Cheney's Hazard*, lying in the county aforesaid, being about a mile west from the said *Cheney's* plantation, where he then lived, beginning," &c. "containing and laid out for one hundred acres of land more or less, now in the tenure and occupation of the said *David Macklefish*," &c. "to have and to hold the land and premises aforesaid, unto him the said *David*, his heirs, executors, administrators and assigns, for ever, to the only proper use and behoof of him the said *David*, his heirs, executors, administrators or assigns, and to no other use, intent, or purpose whatsoever. And the said *Richard* doth hereby covenant, promise and agree, to and with the said *David*, his heirs, executors, administrators and assigns, the land and premises aforesaid, according to the metes and bounds aforesaid, for ever hereafter against all manner of persons claims whatsoever, to warrant and defend. In testi-

mony," &c.   Signed by the said *Richard Hill*, and by him acknowledged on the 4th of April 1726, before two of his lordship's justices of Anne Arundel county court.

*Martin*, (Attorney-General,) for the plaintiff, objected to this deed being read as a deed of *bargain and sale*, the *consideration* expressed therein not being *money* or *blood*, but *land*, which is not sufficient to constitute it a deed of bargain and sale.   He said it might be read as a deed of *feoffment* if the original was produced and proved.

*Shaaff*, for the defendant, contended, that *land* is a good consideration, that foreign money or bank notes would be good, and that the deed may be read as a bargain and sale.   That it may be read as a feoffment, without proof of its execution, as the original record book wherein the deed is recorded is produced in court.   He cited *Gittings vs. Hall*, (ante.)

*Martin*, (Attorney-General.)   The deed may be a deed of exchange, and not necessary to be recorded. It cannot be read as a bargain and sale.   Land has never been considered as a sufficient consideration. Tobacco notes which pass current, and bank notes, are good considerations.   To shew that it could not operate as a deed of bargain and sale for the want of a proper consideration, he cited 1 *Bac. Ab.* 463, 469. *Gilb. on Uses*, 50, 51, 82, 112, 296.   2 *Blk. Com.* 338.

*Shaaff* and *Johnson*, contra.   The deed, upon the face of it, purports to have been made for a valuable consideration.   It cannot operate as an exchange, for it has not the term exchange in it.   Through the medium of the court of chancery this deed would be carried into effect.   The equitable estate being in the bargainee, and the legal estate in the bargainor, a use would vest in the bargainee.   The statute executes and transfers the use into the possession, and makes it a legal estate.   If it is not a deed of bargain and sale, what is it?   It is not a feoffment—it is not an exchange.   There has been no decision where a bargain and sale has been set aside, because there was no

money consideration. Those cases cited turned on the generality of expression. This can operate in no other way than as a bargain and sale, and can there be a deed regularly executed without operation? Before the statute of uses, 27 *Hen. VIII.* this deed would have raised a use effectual in equity. It will therefore now raise a use, and the statute will transfer the possession. The same words which would raise a use at common law, will make a bargain and sale, which is a real covenant, on valuable consideration. 2 *Inst.* 672. In 2 *Blk. Com.* 338, it is said there must be a "*pecuniary consideration.*" What is pecuniary consideration? It is not merely money—it is the value of money. A valuable consideration, means a recompense given. *Shep. Touch.* 218. There must be a monied or *other* valuable consideration. *Shep. Touch.* 220. 1 *Bac. Ab.* 469, refers to 1 *Co. Rep.* 176, and and *Coke* says, no use can be raised upon a general consideration. It must be "money, or *other good consideration* paid or given."—And it must not be expressed generally "valuable consideration." It must mention particularly what the consideration is. In 22 *Viner,* 202, the same principles are laid down. If a man sells lands for divers good considerations, it is not good unless there be an averment of what the consideration is. They also cited for the same purpose, *Jenk.* 247  2 *Stra.* 1228. There has been no determination shewn where a deed is not good mentioning *land* as the consideration, or that a different consideration than *money* was void. The case in *Coke* says it must be money, or *some other valuable* consideration. And is not *land* a valuable consideration?

*Martin,* (Attorney General,) and *Kilty,* in reply. This deed is not necessarily a bargain and sale, because it can operate no other way. It may operate as a contract which a court of chancery would enforce. There are a number of contracts which a court of equity would carry into effect, on which the statute would not operate. In 2 *Inst.* 672, it is not said what *other valuable consideration* is meant. Consideration

Oct. 1804.

Cheney
vs
Watkins

of *blood* may be intended. Nor does *Shep. Touch.* state what other consideration is meant. It does not say the deed shall operate as a *bargain and sale*, if there is other consideration than money or blood. It may no doubt operate as a covenant to stand seised. *Bacon* refers to all these authorities, and he says, it must be a *money* consideration. In 22 *Viner* 202, it is said, that if the consideration is not expressed, "no use shall arise." The land given in exchange is not a valuable consideration, since *no title passed in that land to the grantor in this deed,* nor is this deed evidence that any such title has been made. The heirs of the bargainor cannot be divested without proper and apt words.

CHASE, Ch. J. It seems to be taken for granted by the counsel, that unless the deed can operate as a bargain and sale, it cannot operate at all. But the court think differently, upon inspecting the deed. It may operate as a feoffment, (there being words "give and grant.") if livery of seisin can be proved, and there may be circumstances from which livery may be presumed.

It cannot be a deed of bargain and sale without money consideration, or unless there are general words of consideration under which a pecuniary consideration may be averred. If the consideration is blood, marriage, or natural love and affection, it will operate as a covenant to stand seised, as in 2 *Wilson* 22, 23. If "divers good causes and considerations" are used, without mentioning any specific consideration, the party may aver what the consideration was. If money be averred as the consideration, it will make it a deed of bargain and sale.

The court will lean towards giving validity to a deed. If it will not have operation in one way, it may operate in some other way.

These positions were laid down in this court in the case of *Paca* and *Forwood, (2 Harr. and M'Hen.* 175.) This, therefore, not being a bargain and sale, or deed directed by law to be enrolled, neither the record nor a copy is evidence.

The court are therefore of opinion, that the said enrolment is no evidence, as the said deed could not operate as a deed of bargain and sale, there not being any money consideration expressed therein. The defendant excepted.

2. The defendant then produced in court the original record book brought into court by the register of wills for Anne-Arundel county, in which book was recorded a paper, purporting to be the will of *David Macklefish*, dated the 6th of June 1737, whereby he devised the said land called *Cheney's Hazard*, to his wife *Martha*, for life, with remainder in fee to his son *John*, which said will appeared to have been signed, &c. in the presence of *two witnesses*. And he offered to read from the said book, the record of said will, to prove that the said *David Macklefish* claimed the land in question, and was in possession claiming title to it.

*The record of a will not legally attested by three witnesses, is not legal and admissible evidence to prove that the testator claimed the land therein devised, and was in possession thereof, claiming title to the same.*

But the plaintiff's counsel objected to the reading of the record of the said will from the book aforesaid.

CHASE, Ch. J. The court are of opinion that the record is not legal and admissible evidence to prove that *David Macklefish* claimed the land in question, and was in possession thereof, claiming title to the same, the said will not being attested by three witnesses. The defendant excepted.

3. The plaintiff, further to prove the issue on his part, after having read in evidence to the jury the grant for the tract of land called *Cheney's Hazard*, in the declaration mentioned, issued to *Richard Cheney* on the 30th of May 1663, as before stated, gave evidence to the jury that said patentee died sometime in or about the year 1704, leaving *Richard Cheney*, his eldest son and heir at law, who was born on the 8th of March 1682-3, and who on the 10th of December 1707, married a certain *Rachel Nicholson*; that some time in or about the year 1709, they had a daughter of the name of *Elizabeth*, who in the year

*From great length of possession of the land, the payment of taxes, &c. the jury may presume a conveyance from the patentee, &c.*

1725, and before she was 21 years of age, married a certain *Greenbury Cheney,* by whom she had the said *Zachariah,* the lessor of the plaintiff, who moved from the state of Maryland upwards of forty-two years past, to Juniata in the state of Pennsylvania, and where he hath since resided. He further offered evidence, that the said *Richard,* the son of the patentee, was in his life-time in possession of said land, and lived on it, and that he died in or about the year 1713. He further gave evidence, that *Elizabeth,* the mother of the lessor of the plaintiff, died about the year 1751, in the life-time of her husband *Greenbury* and that he died about fourteen years past. He also proved the lease, entry and ouster, as laid in the declaration.

The defendant, in support of the issue on his part, produced in evidence the entries on the original rent rolls, which are before inserted; and read in evidence the last will and testament of the said *John Durbin,* or *Durden,* mentioned in the said rent roll, dated the 9th of October 1715, whereby he devised the said land to his wife *Elizabeth,* in the manner before mentioned. He then produced evidence to prove, that the said *Elizabeth Durbin,* or *Durden,* after the death of her husband, on the 11th of April 1716, intermarried with a certain *Samuel Burgess,* and that on the 17th of February 1719, the said *Samuel Burgess* and *Elizabeth* his wife, executed a deed for the said land to one *Patrick Sympson;* and that *Sympson* and wife, on the 23d of November 1724, executed a deed for the same to one *Richard Hill.* He then offered to read in evidence to the jury, from the original land record book of Anne-Arundel county, a deed from the said *Richard Hill,* to one *David Macklefish,* for the said land, dated the 4th of April 1726, which the court determined could not be read in evidence. He then offered in evidence to the jury the last will and testament of the said *David Macklefish,* bearing date the 6th of June 1737, devising the said land to his wife *Martha,* for life, with remainder in fee to his son *John,* which the court also rejected. He then offered proof that the said *David Macklefish* had several children,

and that *Richard Macklefish* was his grandson, and heir at law, to whom the right to the said land descended; and that the said *Richard Macklefish* being seised of the said land as the law requires, on the 3d of March 1763, conveyed the same to *Joseph Howard*, by deed dated on that day. He then offered evidence to the jury, that one *Richard Burgess* was the eldest son and heir of the aforesaid *Samuel Burgess*, and *Elizabeth* his wife, and that the said *Richard Burgess*, on the 23d of April 1774, executed a deed for the said land to the said *Joseph Howard*. He then offered evidence to the jury to prove, that the widow of the said *David Macklefish* intermarried with one *Ephraim Howard*. And he offered in evidence the last will and testament of the said *Joseph Howard*, bearing date the 10th of December 1777, whereby he devised the said land to *Benjamin Howard*, after the death of his widow; and that after the death of the testator the devisees entered on the said land called *Cheney's Hazard*; that the widow of the said *Joseph Howard* is dead, and that the said *Benjamin Howard* is also dead; that after the death of the said *Benjamin Howard*, a bill was filed in the court of chancery for the sale of his real estate for the payment of his debts, and that in the year 1794, a decree was made by the chancellor for the sale thereof; under which the land in question was sold to and purchased by *Nicholas Harwood*. He also offered evidence that *John Watkins*, the defendant in this action, was at the time of bringing the suit, the tenant of the said *Nicholas Harwood*. That the said *David Macklefish* in his life-time was in the actual possession of the land; that after his death it was possessed by the said *Ephraim Howard*, and that the said *Ephraim Howard* is charged with the same on the Anne-Arundel county debt books from the year 1753 to 1760; that *John Macklefish*, the devisee named in the will of the said *David*, is charged with the same on the said debt books from the year 1760 to 1766; and that *Joseph Howard* is also charged from the year 1766 to 1771; and that since that time the said *Joseph Howard*, *Benjamin Howard*, and those claiming under them, have pos-

Oct. 1804

Cheney
vs
Watkins

Oct. 1804.

Cheney
vs
Watkins

sessed the same, and paid the taxes and dues on it. That no person by the name of *Cheney*, from the year 1710 to the present time, had been in possession of the said land; but that the same had been from that time held and possessed by the said *John Durbin*, and wife, or those claiming under them. That there are now no debt books for Anne-Arundel county to be found further back than 1753; and that the land records for Anne-Arundel county were burned in or about the year 1705.

Whereupon the defendant prayed the opinion of the court, and their direction to the jury, that if they are of opinion from the evidence aforesaid, that the facts aforesaid stated by the defendant are true, then, although they are also of opinion that the several facts stated by the plaintiff are also true, that they may and ought to presume that the said *Richard Cheney*, the patentee, or *Richard Cheney* his son and heir at law, in due form of law conveyed the same land in the declaration mentioned to the said *John Durbin* or *Durden*.

Chase, Ch. J. The court are of opinion, that if the jury believe that *Elizabeth Durbin*, the devisee in the will of *John Durbin*, intermarried with *Samuel Burgess*, then there is a clear deduction of title, possession, &c. to presume a deed to *John Durbin* from the patentee, or from his son *Richard*; and the court give the direction to the jury as prayed by the defendant. The plaintiff excepted.

Verdict and judgment for the defendant.